## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

NATHAN BOLES

      Plaintiff,

vs.

JARINC, LTD. D/B/A DOMINO'S PIZZA, AND JOSEPH ROMANO, JOHN DOE CORP. 1-10, JOHN DOE 1-10

      Defendant.

---

### CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

---

1.    Plaintiff Nathan Blose, on behalf of himself and all similarly-situated individuals, bring this action against JARINC, Ltd. d/b/a Domino's Pizza, Joseph Romano, John Doe Corp. 1-10, and John Doe 1-10 based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Colorado Wage Claim Act ("CWCA"), C.R.S. 8-4-101, *et seq.*, and the Colorado Minimum Wage Act ("CMWA"), C.R.S. 8-6-101, *et seq.*

2.    Defendants operate Domino's pizza restaurants in Colorado and other states (the "JAR Domino's stores").

3.    Defendants repeatedly and willfully violated the FLSA and state law by failing to adequately reimburse delivery drivers for their delivery-related and other work-

related expenses, thereby failing to pay delivery drivers the legally mandated minimum wage wages for all hours worked.

4.      Defendants also repeatedly and willfully violated the FLSA by requiring them to work dual jobs—one for which they receive tips, and another for which they do not receive tips—but pay them at a tipped wage rate for all hours worked.

5.      All delivery drivers at the Defendants' stores, including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages and reimbursement for out-of-pocket expenses.

6.      Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

7.      Plaintiff brings this action on behalf of himself and similarly situated current and former delivery drivers in Colorado, pursuant to Fed. R. Civ. P. 23, to remedy violations of Colorado wage and hour law by Defendants.

**I.    Jurisdiction and Venue**

8.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

9.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

10.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district and a substantial part of the events giving rise to the claim herein occurred in this district.

## II.   Parties

**Plaintiff Nathan Blose**

11.     Nathan Blose worked for Defendants in Boulder, Colorado.

12.     Nathan Blose is an "employee" of all of the Defendants as defined in the FLSA and the CMWA and of JARINC, Ltd under the CWCA.

13.     Nathan Blose has given written consent to join this action.

**Defendants**

14.     The JAR Domino's stores are part of a single integrated enterprise.

15.     At all relevant times, the JAR Domino's stores shared common management and were centrally controlled and/or owned by Defendants.

16.     At all relevant times, all Defendants maintained control over labor relations at the JAR Domino's stores.

17.     During all relevant times, Defendants permitted employees to transfer or be shared by and between the JAR Domino's stores without retraining.

18.     Defendants have direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated delivery drivers, and also exercise that authority.

19.     During all relevant times, Defendants also exercised operational control over the delivery drivers at Defendants' stores, including, but not limited to, control over recruiting and training of delivery drivers, compensation of delivery drivers, job duties of delivery drivers, reimbursements to delivery drivers, recruiting and training managers, design and layout of the restaurants, sales and marketing programs, public relations

programs, promotional services, appearance and conduct standards, inventory, and inventory controls.

**JARINC, Ltd.**

20.     Defendant JARINC, Ltd. is a Colorado corporation with its principal place of business at 1002 Walnut St., Suite 203A, Boulder, Colorado 80302.

21.     Upon information and belief, "JAR" is a reference to Joseph A. Romano.

22.     JARINC, Ltd. is the legal entity that operates the JAR Domino's stores.

23.     JARINC, Ltd. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

24.     Upon information and belief, JARINC, Ltd. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

25.     JARINC, Ltd. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

26.     At all relevant times, JARINC, Ltd. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

27.     JARINC, Ltd. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

4

28.　At all relevant times, JARINC, Ltd. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

29.　JARINC, Ltd.'s gross revenue exceeds $500,000 per year.

**Joseph Romano**

30.　Joseph Romano is the owner of JARINC, Ltd.

31.　Joseph Romano is the president of JARINC, Ltd.

32.　Joseph Romano is the operator of JARINC, Ltd.

33.　Joseph Romano is individually liable to the JAR Domino's delivery drivers under the definitions of "employer" set forth in the FLSA and CMWA because he owns and operates the JAR Domino's stores, serves as a manager of JARINC, Ltd., ultimately controls significant aspects of the JAR Domino's stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d); 7 CCR 1103-1.

34.　At all relevant times, by virtue of his role as owner and president of JARINC, Ltd., Joseph Romano has had financial control over the operations at each of the JAR Domino's stores.

35.　At all relevant times, by virtue of his role as owner and president of JARINC, Ltd., Joseph Romano has a role in significant aspects of the JAR Domino's stores' day to day operations.

36.　At all relevant times, by virtue of his role as owner and president of JARINC, Ltd., Joseph Romano has had control over the JAR Domino's stores' pay policies.

37.     At all relevant times, by virtue of his role as owner and president of JARINC, Ltd., Joseph Romano has had power over personnel and payroll decisions at the JAR Domino's stores, including but not limited to influence of delivery driver pay.

38.     At all relevant times, by virtue of his role as owner and president of JARINC, Ltd., Joseph Romano has had the power to hire, fire and discipline employees, including delivery drivers at JAR Domino's stores.

39.     At all relevant times, by virtue of his role as owner and president of JARINC, Ltd., Joseph Romano has had the power to stop any illegal pay practices that harmed delivery drivers at the JAR Domino's stores.

40.     At all relevant times, by virtue of his role as owner and president of JARINC, Ltd., Joseph Romano has had the power to transfer the assets and liabilities of the JAR Domino's stores.

41.     At all relevant times, by virtue of his role as owner and president of JARINC, Ltd., Joseph Romano has had the power to declare bankruptcy on behalf of the JAR Domino's stores.

42.     At all relevant times, by virtue of his role as owner and president of JARINC, Ltd., Joseph Romano has had the power to enter into contracts on behalf of each of the JAR Domino's stores.

43.     At all relevant times, by virtue of his role as owner and president of JARINC, Ltd., Joseph Romano has had the power to close, shut down, and/or sell each of the JAR Domino's stores.

44.     At all relevant times, by virtue of his role as owner and president of JARINC,

Ltd., Joseph Romano had authority over the overall direction of each of JAR Domino's

stores and was ultimately responsible for their operations.

45.     The JAR Domino's stores function for Joseph Romano's profit.

46.     Joseph Romano has influence over how the JAR Domino's stores can run

more profitably and efficiently.

### III.   Facts

### Class-wide Factual Allegations

47.     During all relevant times, Defendants operated the JAR Domino's stores.

48.     Upon information and belief, there are at least 8 JAR Domino's stores in

Colorado.

49.     Upon information and belief, there are more JAR Domino's stores in Texas.

50.     The primary function of the JAR Domino's stores is to sell pizza and other

food items to customers, whether they dine in, carry out, or have their food delivered.

51.     Some or all of the JAR Domino's stores employ delivery drivers.

52.     Plaintiff and the similarly situated employees Plaintiff seeks to represent are

current and former delivery drivers employed by Defendants at the JAR Domino's stores.

53.     All delivery drivers employed at the JAR Domino's stores over the last three

years have had essentially the same job duties—deliver pizza and other food items to

customers, and complete various tasks inside the restaurant when they were not

delivering pizzas.

54.     The JAR Domino's delivery drivers work "dual jobs"—one where they deliver food and receive tips, and another where they work inside the store completing non-tipped duties.

55.     During all or some of the relevant time period, Defendants' delivery drivers are paid minimum wage minus a tip credit for all hours worked regardless of whether they were working inside the store or outside the store.

56.     The JAR Domino's delivery drivers regularly spent between 25-60% of their time at work inside the store working in a non-tipped capacity.

57.     The JAR Domino's delivery drivers' non-tipped job duties were not related to their tipped job duties.

58.     The JAR Domino's delivery drivers' inside duties included, but were not limited to, taking phone orders, helping carryout customers, preparing or cutting pizzas, folding pizza boxes, doing dishes, cleaning around the store, and completing any other tasks necessary for the operation of the restaurant.

59.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

60.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

61.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, paid for automobile financing, and incur cell phone and data charges all for the primary benefit of Defendants.

62.     The JAR Domino's stores do not track their delivery drivers' actual expenses and keep records of all of those expenses.

63.     One or more of the JAR Domino's Pizza stores do not reimburse delivery drivers for their actual expenses.

64.     In fact, none of the JAR Domino's Pizza stores reimburse delivery drivers for their actual expenses.

65.     One or more of the JAR Domino's Pizza stores do not reimburse delivery drivers at the IRS standard business mileage rate.

66.     In fact, none of the JAR Domino's Pizza stores reimburse delivery drivers at the IRS standard business mileage rate.

67.     One or more of the JAR Domino's Pizza stores do not reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

68.     In fact, none of the JAR Domino's Pizza stores reimburse delivery drivers at a reasonable approximation of the drivers' expenses.

69.     Delivery drivers at the JAR Domino's Pizza stores are reimbursed either 4% of the sale they are delivering, or a flat rate per delivery no matter how many miles the deliveries take to complete.

70.     Neither of the JAR Domino's stores' reimbursement arrangements fully reimburse delivery drivers for their expenses.

71.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

      a.  2015: 57.5 cents/mile
      b.  2016: 54 cents/mile
      c.  2017: 53.5 cents/mile
      d.  2018: 54.5 cents/mile

72.     As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Colorado law.

73.     At all relevant times, Defendants have applied the same pay policies, practices, and procedures to all delivery drivers at their stores.

74.      All of Defendants' delivery drivers had similar experiences to that of Plaintiff.

75.     All of Defendants' delivery drivers were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the applicable minimum wage rate before deducting unreimbursed vehicle costs.

76.     Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

77.     Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses and other job expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

78.     Upon information and belief, Defendants' delivery drivers were also paid at the wrong overtime rate.

79.     Defendants have willfully failed to pay minimum wage to Plaintiff and similarly situated delivery drivers at the Defendants' Domino's Pizza stores.

### Plaintiff's Individual Factual Allegations

80.     Nathan Blose worked as a delivery driver at one of Defendants' Domino's Pizza stores located in Boulder, Colorado from approximately April 2015 to June 2015, October 2015 to April 2016, and August 2016 to January 2017.

81.     Nathan Blose worked dual jobs—one where he delivered food and receives tips, and another where he worked inside the store completing non-tipped duties.

82.     Nathan Blose was paid a "tipped" minimum wage, *i.e.*, less than minimum wage, for all hours worked.

83.     Nathan Blose worked more than 40 hours in one or more workweeks according to Defendants' records.

84.     Nathan Blose regularly worked over 40 hours per week.

85.     Nathan Blose was paid minimum wage minus a tip credit for all hours worked.

86.     Nathan Blose spent approximately 20-50% of his time at work inside the store working in a non-tipped capacity.

87.     Nathan Blose's inside job duties were not related to his delivery job duties.

88.     Nathan Blose's inside duties included taking phone orders, helping carryout customers, cleaning, cutting pizzas, and folding pizza boxes.

89.     Nathan Blose received 4% of each delivery he completed as a reimbursement for his delivery-related expenses.

90.     Nathan Blose was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

91.     Nathan Blose was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone service, GPS service, and other equipment necessary for delivery drivers to complete their job duties.

92.     Nathan Blose purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, financing, and incur cell phone and data charges all for the primary benefit of Defendants.

93.     Defendants did not track the actual expenses incurred by Nathan Blose.

94.     Defendants did not reimburse Nathan Blose based on his actual delivery-related expenses.

95.     Nathan Blose was not reimbursed at the IRS standard mileage rate for the miles he drove while completing deliveries.

12

96.    Defendants' reimbursement policy did not reasonably approximate the expenses incurred by Nathan Blose.

97.    During Nathan Blose's employment with Defendants, Defendants have failed to adequately reimburse Nathan Blose for automobile and other job-related expenses.

98.    Nathan Blose regularly made two to three deliveries per hour during the hours he works as a delivery driver.

99.    Nathan Blose regularly drove about 4 miles per delivery.

100.    Nathan Blose's reimbursement payments were regularly less than $1-2.

101.    For example, if Nathan Blose delivered 4 pizzas at a total cost of those pizzas was $60, he received $2.40 in total reimbursement.

102.    At 4 miles per delivery, this amounts to a reimbursement to Nathan Blose of $.15 per mile.

103.    In 2015, for example, the IRS business mileage reimbursement has been $.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Nathan Blose's automobile expenses, every mile driven on the job decreased his net wages by approximately $.335 ($.575 - $.15) per mile. Considering his estimate of about 4 average miles per delivery, Defendants under-reimbursed him about $1.34 per delivery ($.335 x 4 miles).

104.    Thus, while making deliveries (assuming 2.5 deliveries per hour), Nathan

Blose has "kicked back" to Defendants approximately $3.35 per hour ($1.34 per delivery

x 2.5 deliveries per hour).

105.    As a result of unreimbursed automobile expenses and other job-related

expenses, Defendants have failed to pay Nathan Blose minimum wage as required by

law.

**Collective Action Allegations**

106.    Plaintiff brings the First and Second Counts on behalf of himself and

All similarly situated current and former delivery drivers employed at the
JAR Domino's stores owned, operated, and controlled by Defendants,
during the three years prior to the filing of this Class Action Complaint and
the date of final judgment in this matter, who elect to opt-in to this action.

107.    At all relevant times, Plaintiff and the FLSA Collective have been similarly

situated, have had substantially similar job duties, requirements, and pay provisions, and

have all been subject to Defendants' decision, policy, plan, practices, procedures,

protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum

wage for all hours worked and failing to reimburse delivery drivers for automobile

expenses and other job-related expenses.  Plaintiff's claims are essentially the same as

those of the FLSA Collective.

108.    Defendants' unlawful conduct is pursuant to a corporate policy or practice.

109.    Defendants are aware or should have been aware that federal law required

them to pay employees minimum wage for all hours worked and time and a half overtime

wages for hours worked in excess of 40 per week.

110.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

111.    Defendants are aware or should have been aware that they were not permitted to pay their employees a tipped wage rate for hours worked in a non-tipped capacity.

112.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

113.    The FLSA Collective members are readily identifiable and ascertainable.

114.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

115.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Class Action Allegations

116.    Plaintiff brings the Third and Fourth Counts under the Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the JAR Domino's stores in the State of Colorado from the date three years prior to the filing of the complaint to the date of final judgment in this matter (the "Rule 23 Class").

117.    Excluded from the Rule 23 are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during

the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 class.

118.   The number and identity of the Rule 23 class members are ascertainable from Defendants' records.

119.   The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class Member are determinable from Defendants' records.

120.   For the purposes of notice and other purposes related to this action, the names and contact information of Rule 23 Class Members are readily available from Defendants.

121.   Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

122.   The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

123.   There are more than 50 Rule 23 Class members.

124.   Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

125.     Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, and failing to reimburse for expenses.

126.     Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Colorado wage law.

127.     Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.   Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

128.     Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

129.     Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

130.     Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

131.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.   Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary

duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.

132.   Upon information and belief, Defendants and other employers throughout the state violate the Colorado wage and hour law. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

133.   This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

134.   Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Class members individually and include, but are not limited to:

   a. Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

   b. Whether Defendants required Plaintiff and the Rule 23 Class members to drive their own cars for work;

    c. Whether Defendants failed to reimburse automobile expenses, gasoline expenses, and other job-related expenses, as described herein, causing Plaintiff and the Rule 23 Class members' wages to drop below legally allowable minimum wage and overtime;

    d. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove completing deliveries for Defendants;

    e. Whether Defendants recorded Plaintiff and the Rule 23 Class members' actual expenses;

    f. Whether Defendants properly paid Plaintiff and the Rule 23 Class members for hours worked in a non-tipped capacity;

    g. Whether Defendants properly compensated Plaintiff and the Rule 23 Class for hours worked in excess of 40 each workweek;

    h. Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

    i. The nature and extent of class-wide injury and the measure of damages for those injuries.

135.   In recognition of the services Plaintiff have rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

**IV.   Causes of Action**

<u>Count 1</u>
**Failure to Pay Minimum Wages - Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

136.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

137.    Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

138.    Plaintiff and the FLSA Collective worked in dual jobs.

139.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

140.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

141.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

142.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

143.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Overtime Wages—Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

144.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

145.    Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

146.    Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiff and the FLSA collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

147.    By not paying Plaintiff and the FLSA collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

148.    As a result of Defendants' willful violations, Plaintiff and the FLSA collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorney's fees.

### Count 3
**Failure to Pay Minimum Wages—C.R.S. 8-6-101, *et seq*.**
**(On Behalf of Plaintiff and the Rule 23 Class)**

149.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

150.    During the time periods in which Colorado required payment of a higher minimum wage than the federal minimum, Colorado's higher minimum wage applied. C.R.S. 8-6-101; Colorado Minimum Wage Order Number 31 and 32 (7 CCR 1103-1).

151.    Defendants have at all times been an "employer" of Plaintiff and the Rule 23 Class members within the meaning of the Colorado minimum wage law.

152.    Defendants have at all times been a covered industry within the meaning of Colorado minimum wage law.

21

153.    Defendants failed to pay Plaintiff and the Rule 23 Class members all minimum wages owed under Colorado minimum wage law.

154.    Defendants conduct and practices, as described herein, were willful and intentional.

155.    By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiff the Rule 23 Class members for unpaid wages, costs, reasonable attorneys' fees, and pre-judgment interest for all violations which occurred within the three years prior to the filing of the Complaint.

**Count 4**
**Colorado Wage Claim Act—C.R.S. 8-4-101, *et seq*.**
**(On Behalf of Plaintiff and the Rule 23 Class)**

156.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

157.    Defendant JARINC, Ltd. has at all times been an "employer" of Plaintiff and the Rule 23 Class members within the meaning of the Colorado Wage Act.

158.    Defendant JARINC, Ltd. failed to pay Plaintiff and the Rule 23 Class members in a timely manner as required by C.R.S. 8-4-103(1).

159.    Defendant JARINC, Ltd. have taken unlawful deductions from the wages of Plaintiff and the Rule 23 Class members by failing to properly reimburse for delivery-related expenses. *See* C.R.S. 8-4-105.

160.    For all payments not made within fourteen days of a written demand, including this Complaint, Plaintiff and the Rule 23 Class members are entitled to recover

all unpaid wages and compensation plus a penalty of 125% of the first $7,500 of the unpaid amount and 50% of any additional amount.

161.   This Complaint serves as a written demand under C.R.S. § 8-4-101(15).

162.   Because Defendant JARINC, Ltd.'s conduct and practices, as described herein, were willful and intentional, Colorado law imposes an additional 50% penalty pursuant to C.R.S. § 8-4-109(3)(c).

163.   By reason of the unlawful acts alleged herein, Defendant JARINC, Ltd. is liable to Plaintiff the Rule 23 Class members for unpaid wages, penalties, costs, and reasonable attorneys' fees for all violations which occurred within the three years prior to the filing of the Complaint.

**WHEREFORE**, Plaintiff prays for all of the following relief:

A.   Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.   Unpaid minimum wages, overtime wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.   Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure under Colorado state law.

D.     Designation of Plaintiff as a representative of the Rule 23 Class and counsel of record as Class Counsel.

E.     Declaratory judgment that the practices complained of herein are unlawful under the Colorado Revised Statutes.

F.     An award of unpaid minimum wages, overtime wages, unreimbursed expenses, unlawful deductions, and penalties due under Colorado wage laws.

G.     An award of prejudgment and post-judgment interest.

H.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

I.     Such other legal and equitable relief as the Court deems appropriate.

**JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

Dated: August 24, 2018

Respectfully submitted,

s/ Matt Molinaro
David Lichtenstein
Matt Molinaro
Kristina Rosett
Law Office of David Lichtenstein, LLC
1556 Williams St., Suite 100
Denver, CO 80218
Telephone: (303) 831-4750
Facsimile:  (303) 863-0835
dave@lichtensteinlaw.com
matt@lichtensteinlaw.com
kristina@lichtensteinlaw.com

*Counsel for Plaintiff and the putative class*

Plaintiff's Address:
5140 Ferguson Road
Indiana, PA 15701