IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
DENVER DIVISION

| | |
|---|---|
| Nathan Blose, *et al.,* | |
| *On behalf of himself and those similarly situated*, | Case No. 1:18-cv-02184-RM-SKC |
| Plaintiffs, | Judge Raymond Moore |
| v. | Magistrate Judge S. Kato Crews |
| JARINC, Ltd., *et al.* | |
| Defendants. | |

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

Plaintiffs ask that the Court preliminarily approve the parties' Settlement Agreement (attached as Exhibit 1) and proposed Notice (attached as Exhibit 2). The proposed Settlement Agreement resolves the collective/class-wide claims raised in this lawsuit.

The parties request that the Court:

(1) Preliminarily approve the proposed settlement;

(2) Approve the content, form, and distribution of the class notice and claim form;

(3) Approve the proposed Amended Complaint (ECF Documents 133, 133-1, 133-2);[1]

(4) Preliminarily approve the service award for Plaintiffs;

(5) Provisionally approve Class Counsel's request for attorneys' fees and costs; and

(6) Schedule a formal fairness hearing approximately 120 days after preliminary approval.

---

[1] Plaintiffs note that Plaintiff Blose is not a named plaintiff in the Amended Complaint. Moreover, the Amended Complaint adds Plaintiff Huckstep as a named plaintiff.

Respectfully submitted,

*/s/ Nathan Spencer*
Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Nathan B. Spencer (92262)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 452-3887
Facsimile: (614) 340-4620
*nspencer@billerkimble.com*
*pkrzeski@billerkimble.com*

David Lichtenstein
Matt Molinaro
Kristina Rosett
LAW OFFICE OF DAVID
LICHTENSTEIN, LLC
1556 Williams St., Suite 100
Denver, CO 80218
dave@lichtensteinlaw.com
matt@lichtensteinlaw.com
kristina@lichtensteinlaw.com

*Counsel for Plaintiff*

Memorandum in Support of Plaintiffs' Unopposed Motion to
Preliminarily Approve Settlement

### 1. Introduction

The parties have reached a settlement that would resolve all of the claims raised in this lawsuit. Plaintiffs now ask the Court for preliminary approval of the parties' Settlement Agreement, attached as Exhibit 1.

### 2. Standard for Settlement Approval

Courts typically use a three-step procedure for approving settlements. *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016). At the first step, the Court determines whether to preliminarily approve the settlement. *Id.* Next, notice of the settlement is sent to interested persons. *Id.* Finally, the Court must decide whether to finalize approval after holding a hearing. *Id.*

In evaluating an FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resulution (sic) of a bona fide dispute over FLSA provisions." *Pliego*, 313 F.R.D. at 127-28 (quoting *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982)). If the settlement reflects a reasonable compromise of issues in dispute, the court may approve the settlement to promote the policy of encouraging settlement of litigation. *Id.* In applying this analysis, the district court should examine four factors: (1) was the settlement achieved in an adversarial context; (2) were the plaintiffs represented by attorneys who can protect their rights; (3) does the settlement reflect a reasonable compromise over issues that are actually in dispute; and (4) is the settlement fair? *Id.*

1

### 3.  Background of the Lawsuit and Claims

Plaintiffs Nathan Blose, Kellie Huckstep, and Stephanie Rosvall delivered food for Defendants' Domino's franchise operation. On August 24, 2018 Plaintiff Nathan Blose filed this lawsuit on behalf of himself and similarly situated delivery drivers. *See* Doc. 1.  On October 27, 2020 Plaintiff amended the Complaint to add Plaintiff's Kellie Huckstep and Stephanie Rosvall as named Plaintiffs and remove Nathan Blose as a named Plaintiff. Plaintiffs' First Amended Complaint alleges several wage and hour violations.

First, Plaintiffs claim that Defendants under-reimbursed delivery drivers for the expenses that drivers incurred in having to use their own cars to deliver food. Plaintiffs allege that, because Defendants paid the drivers at or below full minimum wage (*i.e.*, Defendants paid a tipped wage), any under-reimbursement could trigger a claim for unpaid minimum wages under the FLSA and Colorado law.

Second, Plaintiffs assert that Defendants failed to properly take a tip credit under 29 U.S.C. § 203(m). Specifically, Plaintiffs allege that Defendants failed to pay the wage rate they promised to pay, after accounting for kickbacks, and therefore cannot avail themselves of the tip credit even if they properly informed Plaintiffs of it.

Third, Plaintiffs asserted an overtime time claim under the Fair Labor Standards Act (29 U.S.C., §§ 201–209). Plaintiffs and other delivery drivers worked more than 40 hours per workweek, and Defendants required them to pay for automobile expenses and other job-related expenses out of pocket. Plaintiffs allege that because Defendants did not pay Plaintiffs and other delivery drivers at least one-and-half-times their normal hourly rate for time worked in excess of 40 per workweek, Defendants failed to properly pay overtime.

Fourth, Plaintiffs asserted a claim for failure to pay Plaintiffs and the delivery drivers in a timely manner as required by C.R.S. 8-4-103(1).

Fifth, Plaintiffs asserted claims that Defendants were unjustly enriched as a result of Defendants' mileage under-reimbursement practices.

Defendants deny each of the claims asserted by Plaintiffs and contend that all delivery drivers were properly paid wages and reimbursed for expenses as required by federal and state law.

## 4. Summary of Settlement Terms

The settlement agreement creates a settlement fund of $1,800,000.00, inclusive of attorney's fees, expenses, and service awards. *See* Exhibit 1. Under the terms of the Agreement, unless they decide to opt out, each class member who worked for Defendants at any time between August 24, 2015 and December 31, 2020 will receive a share of the settlement fund. The settlement agreement contemplates two classes of drivers. "Traditional Delivery Drivers" are those delivery drivers who were paid a tipped wage rate while making deliveries and who received some amount of reimbursement for automobile expenses from Defendants during their employment. "On Demand Delivery Drivers" are those delivery drivers who were paid an hourly rate in excess of minimum wage, approximately $15 per hour.

After subtracting fees, expenses, service awards, and claims administration costs, the remainder of the settlement fund will be distributed based on miles driven during the relevant class time period. Two adjustments will be made to this prorated distribution. First, Traditional Delivery Drivers who opted in will be credited with their actual number of miles driven while On-Demand Delivery Drivers who opted in will be credited with one half of their actual miles driven for settlement calculation purposes. This is to account for the higher hourly wage rate for the On-

3

Demand Delivery Drivers. Second, drivers who joined the case prior to the settlement will receive an additional amount for miles driven more than three years prior to the settlement being reached. This is to account for those drivers potentially preserving additional claims compared to drivers who did not join the case.

Upon preliminary approval, a Notice of Settlement (attached as Exhibit 2) will be distributed to the class members providing them with an opportunity to object or opt out before the Court considers whether to grant final approval. The Notice Period is 60 days.

As part of the settlement, Defendants agree not to oppose Plaintiffs' counsel's request for a fee award of 33.33% of the common fund, advanced expenses, a $10,000 service award each for Plaintiffs Nathan Blose and Stephanie Rosvall, and a $2,000 service award for Plaintiff Kellie Huckstep. Funds allocated for settlement administration will be deducted from the settlement fund and are expected to be approximately $20,000.

**5. The settlement provides for a fair resolution of disputed claims.**

In determining whether to preliminarily approve an FLSA settlement, the district court should examine four factors: (1) was the settlement achieved in an adversarial context; (2) were the plaintiffs represented by attorneys who can protect their rights; (3) does the settlement reflect a reasonable compromise over issues that are actually in dispute; and (4) is the settlement fair? *Pliego*, 313 F.R.D. at 127-28.

**5.1.    This is a bona fide dispute in an adversarial context concerning disputed questions of law and fact.**

To meet their obligation to prove a bona fide, adversarial dispute, the parties must present: (1) a description of the nature of the dispute;  (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employee's

4

right to a minimum wage or overtime; (4) the employee's justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage. *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 128-29 (D. Colo. 2016); *Baker v. Vail Resorts Mgmt. Co.*, No. 13-CV-01649-PAB-CBS,2014 WL 700096, at *1 (D. Colo. Feb. 24, 2014). The mere existence of an adversarial lawsuit is not enough to satisfy the bona fide dispute requirement. *Id.*

Plaintiffs' claims arise from Defendants' vehicle expense reimbursement practices. See Section 3, *supra*. Plaintiffs and their fellow delivery drivers use their personal vehicles to deliver pizzas and other food items for Defendants, incurring vehicle expenses in order to do so. It is undisputed that food delivery companies must pay their minimum wage workers for expenses incurred as a result of the workers using their own cars for deliveries. This dispute is over how much Defendants should have paid in reimbursement. Plaintiffs claim Defendants' reimbursement practices fall short, resulting in minimum wage violations for Defendants' delivery drivers. Specifically, Plaintiffs claim a reasonable approximation of delivery drivers' expenses would have resulted in reimbursement at the IRS standard mileage rate of approximately $0.55 per mile. Defendants believe their reimbursement practices reasonably approximate drivers' expenses and that no minimum wage violation has occurred.

From approximately August 2015 to December 2020, Defendants reimbursed Traditional Delivery Drivers approximately $.18 per mile. Defendants compensated On-Demand Delivery Drivers at an hourly wage of $15.00, which they maintained was sufficient to cover any expenses incurred. The amount of under-reimbursement, if any, is in dispute, and Defendants claim, even under the IRS rate, the alleged unpaid wages would be less than Plaintiffs calculate. In addition to

5

unpaid wages, Plaintiffs would have sought additional damages. *See* 29 U.S.C. § 260. Defendants dispute that Plaintiffs would be entitled to liquidated damages as Defendants contend they acted in good faith and had reasonable grounds for believing that its reimbursement practices were in compliance with the FLSA.

Plaintiffs' tip credit claim is predicated on the under-reimbursement claim. Plaintiffs assert that Defendants improperly took a tip credit for hours worked making deliveries by failing to pay the agreed upon wage by under-reimbursing for delivery expenses.

Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, *i.e.:*

> The amount of the cash wage that is to be paid to the tipped employee by the employer;
>
> the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee;
>
> that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and
>
> that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59.

Here, Plaintiffs allege Defendants have failed to actually pay the wage rate they promised to pay, after accounting for kickbacks, and therefore cannot avail themselves of the tip credit even if they had properly informed Plaintiffs of it. *Meetz v. Wis. Hospitality Grp. LLC,* No. 16-cv-1313, 2017 WL 3736776, *5 (E.D. Wisc. Aug. 29, 2017) (explaining that an employer cannot

retroactively claim a greater tip credit than they informed employees they would be claiming). The notice requirement is "strictly construed," and must be complied with even if the employee receives tips at least equivalent to minimum wage. *See, e.g., Chung v. New Silver Palace Restaurant, Inc.*, 246 F.Supp.2d 220, 229 (S.D.N.Y. Sept. 13, 2002). Defendants contend that Plaintiffs were properly informed of the tip credit and that the tip credit was correctly applied to pay Plaintiffs their wages in compliance with the law.

The value of this claim is predicated on the under-reimbursement claim. On one hand, if Defendants could prove the reimbursement rate covered all expenses, its value would be $0. On the other, if there is a valid under-reimbursement claim, its value could be significant.

### 5.2. Plaintiffs were represented by competent and experienced counsel.

Plaintiffs' counsel is well-qualified to handle this matter. This case is one of many "delivery driver lawsuits" that Plaintiffs' counsel is litigating across the nation. Through those cases, counsel have litigated many of the key issues in these cases, including motions to dismiss, motions for summary judgment, and motions for class certification. *See, e.g., Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 WL 1367663 (S.D. Ohio Mar. 26, 2019) (motion to dismiss); *Hatmaker*, 2019 WL 5725043 (motion for summary judgment); *Thomas v. Papa John's Int'l, Inc.*, No. 1:17-cv-411, 2019 WL 4743637, (S.D. Ohio Sept. 29 2019) (contested motion for conditional certification); *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157, 2019 WL 4601930 (S.D. Ohio Sept. 23, 2019) (motion to dismiss); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594 (S.D. Ohio Nov. 6, 2018) (contested motion for class certification). Thus, Plaintiff's counsel is well-versed in this area of law and the strengths and weaknesses of the claims at issue. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *6 (S.D.

Ohio Nov. 25, 2019) ("The Court is familiar with Class Counsel's work in this and other cases like it. The '[] delivery driver' cases require substantial expertise and firm resources to pursue. The Court agrees that Class Counsel's work in this area is exemplary…"). Plaintiffs' counsel has actively and vigorously pursued Plaintiffs' (and the putative class members') claims in this case. Plaintiffs' counsel has committed, and will continue to commit, the resources necessary to representing the putative class in this case.

Plaintiff's counsel attests that, given the strengths and weaknesses of the claims and collectability, this settlement is fair, adequate, and reasonable.

### 5.3.    The settlement was honestly negotiated.

The parties reached the above settlement only after substantial negotiations, which included two private mediations—first with the Honorable William F. Downes (Ret.) on August 27, 2019, then with the Honorable F. Bradford Stillman (Ret.) on December 2, 2020, both of whom are well-respected mediators. At the December 2020 mediation, the parties reached the agreement currently before the Court.

### 5.4.    The settlement is fair.

To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales. *Pliego*, 313 F.R.D. at 130. Courts considering collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement under Fed. R. Civ. P. Rule 23(e). *See Gambrell v. Weber Carpet, Inc.*, No. 10-131-KHV, 2012 WL 5306273, at *3 (D. Kan. Oct. 29, 2012). To determine whether a proposed settlement under Fed. R. Civ. P. 23(e), is fair and equitable to all parties, courts apply the following fairness factors: (1) whether the proposed settlement was fairly and honestly negotiated, (2)

whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation and (4) the judgment of the parties that the settlement is fair and reasonable.

As described above, the settlement was achieved after fair and honest negotiations across multiple mediations with former federal judges.

Additionally, questions of law and fact remain in dispute regarding the proper reimbursement rate for the drivers in this case. The parties anticipate the resolution of these issues will likely require considerable discovery from the parties and significant expert testimony. As a result, the outcome of the litigation for either party is far from settled. Given the inherent uncertainty in continuing litigation of these issues, the recovery for the delivery drivers in the proposed settlement is a good outcome.

Finally, Plaintiffs' Counsel and Defendants' Counsel, both of whom are well-versed in these types of cases, attest that the settlement is fair and reasonable in light of the foregoing considerations.

### 5.5.    The payment of attorneys' fees is reasonable.

Class Counsel will apply for one-third of the settlement fund as attorneys' fees ($600,000). Defendants have agreed not to object to this award, which is a standard amount in this type of case. *See, e.g.*, *Whittington v. Taco Bell of Am., Inc.*, Civil Action No. 10-cv-01884-KMT-MEH, 2013 U.S. Dist. LEXIS 161665, at *19 (D. Colo. Nov. 13, 2013) ("In common fund cases, utilizing the percentage method to calculate attorney fees awards is the standard."); *Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*, Civil Action No. 09-cv-01543-REB-KMT, 2010 WL

5387559, at *5-*6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation*, Nos. CIV 89-822-T, CIV 89-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit").

Further, the Settlement Agreement is not conditioned on an award of attorneys' fees. *See* Exhibit 1, §5(B). Thus, the Court does not need to make a final decision as to fees and costs now. Instead, Plaintiffs ask that the Court provisionally approve the fee award, subject to any objections from class members prior to final approval.

In any case, Class Counsel will expend additional attorneys' fees during the notice process and approval process, which could affect the Court's evaluation of the final fee award. At the final fairness hearing, the Court will be in a position to grant final approval to the fee request after taking into account any objections to the fee.

### 5.6. The incentive payment is reasonable, and similar payments are routinely awarded.

"[N]amed plaintiffs . . . are eligible for reasonable incentive payments" as part of a class action settlement. *Pliego*, 313 F.R.D. at 131 (D. Colo. 2016) (quoting *Staton v. Boeing*, 327 F.3d 938, 977 (9th Cir. 2003)). When evaluating the reasonableness of an incentive award, courts may consider factors such as the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation. *Id.*

Such compensation for time, effort, risk, and service does not improperly grant preferential treatment to class representatives.

The settlement agreement earmarks funds from the settlement amount to compensate Plaintiffs Blose and Rosvall $10,000 each and Plaintiff Huckstep $2,000. This amount is in line with amounts awarded in similar cases. *See Dorn v. Eddington Sec., Inc.,* No. 08 Civ. 10271(LTS), 2011 WL 9380874, at *7 (S.D.N.Y. Sept. 21, 2011) (finding service award of $10,000 to the plaintiff in a FLSA and state law wage class action was reasonable, stating "such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs."); *Shaw v. Interthinx,* No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *9 (D. Colo. Aug. 22, 2015) (approving $10,000 incentive awards to each of the five named plaintiffs).

Plaintiffs spent time and effort working with their counsel on this case. Plaintiffs were involved in preparation of pleadings, motions, and provided valuable input to their counsel at every stage of the litigation, included in achieving this settlement. As in any case, Plaintiffs bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiffs' participation, this class settlement would not have occurred.

**6. For settlement purposes, the Court should certify a class and collective action.**

Rule 23 allows one or more individuals to act on behalf of a class of individuals with similar claims. Representative actions are especially appropriate in wage and hour lawsuits where individual claims may be relatively small, but substantial in the aggregate. For settlement purposes, Plaintiffs Huckstep and Blose ask the Court to certify the following hybrid class/collective:

11

> All current and former "traditional" delivery drivers employed from August 24, 2015 to December 31, 2020 at Defendants' Domino's stores owned, operated, and/or controlled by Defendants.[2]

Plaintiff Rosvall asks the Court to certify the following hybrid class/collective

> All current and former "on-demand" delivery drivers employed from August 24, 2015 to December 31, 2020 at Defendants' Domino's stores owned, operated, and/or controlled by Defendants.

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As described below, all of the requirements for class certification are met. Defendants consent to class/collective action certification for settlement purposes.

While the FLSA requires similarly-situated workers to affirmatively "opt-in" before becoming a party plaintiff to an action for unpaid wages, Colorado law does not contain such a requirement. *See* Colorado Wage Claim Act and Colorado Minimum Wage Act. Consequently, plaintiffs may maintain class actions for unpaid wages under Fed. Civ. R. 23. *See, e.g., Pliego*, 313 F.R.D. 117 (certifying a class for Colorado minimum wage claims for settlement purposes). Because the standard to certify a collective action is easier to meet than the standard under Rule 23, meeting the Rule 23 standard also meets the collective action standard. Therefore, collective action certification is also appropriate here.

### 6.1. Plaintiffs have satisfied the four Rule 23(a) prerequisites for class certification.[3]

---

[2] The Defendants' Domino's stores are defined in the settlement agreement and include 11 locations. *See* Exhibit 1, §3.

[3] Subject to the approval of the Court, and for settlement only, Defendants do not contest whether Plaintiffs have satisfied the requirements for class certification pursuant to Rule 23. Any class certification order entered in this Action pursuant to the Settlement Agreement, or otherwise shall not constitute a waiver or admission, in this or in any other proceeding, by Defendants of a finding or evidence that Plaintiffs' claims, the claims of any person in the Settlement Class, or any Released Claims are appropriate for class treatment, or that any requirement for class

Under Rule 23(a), Plaintiffs must satisfy four prerequisites in order for the Court to certify a class: (1) the class must be "so numerous that joinder of all members is impracticable," (2) "questions of law or fact common to the class" must exist, (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class," and (4) the representative parties must "fairly and adequately protect the interests of the class." As set forth below, for purposes of settlement each of these requirements is satisfied here.

### 6.1.1.  Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. "There is no minimum numerical threshold which must be exceeded to satisfy this requirement. Rather, the nature of the particular case, and the nature of the proposed class, are key considerations in determining whether joinder of all parties is not practical." *Gianzero v. Wal-Mart Stores, Inc.*, No. 09-cv-00656-REB-BNB, 2010 WL 1258071, at *2 (D. Colo. Mar. 29, 2010).

Here, the class list provided by Defendants identifies over 1,290 class members who were employed at the Defendants' stores and were therefore subject to the pay policies alleged in the Complaint. This easily meets the numerosity requirement.

### 6.1.2. Commonality

"A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010). Class members must "possess the same interest and suffer the same injury." *Trevizo v. Adams*, 455 F.3d 1155, 1163

---

certification is otherwise satisfied in this Action.  Defendants in no way waive their respective rights to challenge Plaintiffs' allegations that a class may be certified in this Action, in the event that the Settlement Agreement does not become effective for any reason.

(10th Cir. 2006). Commonality still exists if class members differ factually but challenge the application of a commonly-applied policy. *J.B. ex rel Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999).

Here, Plaintiffs maintain that the legal theories and relevant facts are common to the class because the class consists of workers that were allegedly harmed in the same way. Plaintiffs have identified the following common questions of law or fact presented by their claims: (1) how much Defendants reimbursed delivery drivers for their expenses, (2) whether Defendants adequately reimbursed delivery drivers for their delivery expenses, (3) the nature and extent of the drivers' in-store work, (4) whether Defendants can dispute whether they adequately compensated drivers, and (5) what damages and liquidated damages are available to the class members as a result of Defendants' practices. Even outside of the settlement context—*i.e.*, when Defendants disputed class certification—courts have found that class certification is appropriate for nearly identical claims. *Brandenburg*, 2018 WL 5800594.

### 6.1.3. Typicality

A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class. *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 U.S. Dist. LEXIS 58352, at *3 (D. Colo. June 1, 2011). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

Here, Plaintiffs are members of the putative class and their claims are typical of all class members' claims in that they all arise from the same course of conduct. Plaintiffs maintain that

14

each claim in this lawsuit arises from Defendants' pay practices that were applied to all employees in the same way. For example, the same or similar reimbursement rates applied to all class members in each class. Whether Defendants' pay practices are illegal is a question answerable on a class-wide basis. The premise of the typicality requirement is simply stated: as goes the claims of the named plaintiff, so go the claims of the class. If Defendants' wage and hour practices violate Colorado law as to Plaintiffs, they violate Colorado law as to the putative class members; and, accordingly, the typicality requirement is met here.

### 6.1.4.  Adequacy of Representatives

The adequate representation requirement of Rule 23(a)(4) concerns both the competence of the class representative's counsel and the representative's willingness and ability to control the litigation and to protect the interests of the class as a whole." *Maez v. Springs Auto. Group, LLC*, 268 F.R.D. 391, 396 (D. Colo. 2010). Resolution of two questions determines legal adequacy: (1) does the named plaintiff and her counsel have any conflicts of interest with other class members, and (2) will the named plaintiff and her counsel prosecute the action vigorously on behalf of the class. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-1188 (10th Cir. 2002).

"Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of upholding the class, subject to later possible reconsideration . . . ." *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998). However, even apart from the presumption, in light of the foregoing factors, Plaintiff has prosecuted the action vigorously on behalf of the class through counsel.

### 6.2.  Plaintiffs have satisfied the Rule 23(b)(3) class certification requirements.

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class mechanism is superior to other methods of relief. As discussed below, both of Rule 23(b)(3)'s requirements are met in this case.

### 6.2.1.  Common questions of law and fact predominate.

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is established where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

There are numerous common questions of law and fact arising out of Defendants' conduct, making this an appropriate case for resolution by means of a class action. Most notably, liability turns on what the proper reimbursement rate is for delivery drivers and whether Defendants paid that rate. These issues would be determined based on common proof, and common questions predominate in this case. As a result, this case is appropriate for class certification.

### 6.2.2.  A class action is a superior method of adjudication.

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by

members of the class; (3) the desirability of concentrating the litigation in a particular forum; and

(4) the difficulties likely to be encountered in management of the class action.

Here, there is no evidence that putative class members have any interest in maintaining this

litigation in separate actions. Indeed, the relative size of the individual claims in this case makes

class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an

economical way. Moreover, efficiency favors concentrating the claims in this Court, as there is no

record of other, similar litigation pending in Colorado. A final resolution of Defendants' liability is

also fair because the case deals with policies affecting large numbers of employees. It avoids

competing decisions on the issues and offers finality. There is no device that can resolve these

matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in

management of the class action as the putative class is a defined size. Class certification here

promotes consistent results, giving Defendants "the benefit of finality and repose." *Id.* (internal

citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner

of resolving these claims.

### 7. **The proposed notice conforms to federal law.**

The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice

clearly and accurately describes the nature of the action, the definition of the class certified, and

the class claims and defenses. *See generally* Exhibit 2, Notice of Settlement. The notice also informs

putative class members that they may enter an appearance through counsel if the member so

desires, that only those employees who file a claim form will participate in the settlement, and

explains the binding effect of the release. The notice provides putative class members with an

opportunity to file objections to the settlement as required by Rule 23(e)(4)(A), and informs

potential class members that they must file an attached claim form in order to receive payment from the settlement.

The Court should direct distribution of the class notice in the manner described in the settlement agreement. The settlement agreement envisions sending the Notice by first class mail and email.

## 8. The Court should set a hearing for final approval.

The parties request that the Court set a hearing for final approval of the settlement to occur approximately 160 days after the Court grants preliminary approval of the proposed settlement. This date would allow a reasonable period for class notices to be mailed and for class members to submit claim forms, object to, or opt-out of the settlement, but would not unduly delay the case's adjudication. The timeline envisioned for administration is below:

| Time | Event |
|---|---|
| Within 14 days of preliminary approval | Defendants provide Class Counsel and the Administrator with the final list of class members, their contact information, and relevant wage and reimbursement data. |
| Within 14 days after receiving the class list | The Administrator will send the notice. |
| Within 60 days after mailing notices | Class members must opt-out or object, if they desire to. |
| Within 30 days of the notice period deadline | Plaintiffs will draft and file a motion for final approval. |
| Within 40 days of the Court's final approval Order | The Claims Administrator will distribute payments to Class Member and Class Counsel |

## 9. Conclusion

Plaintiffs ask the Court to enter an Order: (1) granting preliminary approval of the settlement; (2) provisionally approving Class Counsel's request for attorney's fees and costs; (3) approving Plaintiffs' service awards; (4) directing distribution of the Class Notice and Claim Form to class members to provide an opportunity to join this settlement, opt-out or object to the

18

settlement; (5) approving the proposed Amended Complaint; and (6) setting the hearing date for the final approval of the settlement.

Respectfully submitted,

*/s/ Nathan Spencer*
Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Nathan B. Spencer (92262)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 452-3887
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*nspencer@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiffs*

19

**Certificate of Service**

Plaintiffs certify that a copy of the foregoing will be automatically served on all parties via the Court's ECF system.

/s/ *Nathan Spencer*
Nathan Spencer