In the United States District Court
for the District of Colorado
Denver Division

| | |
|---|---|
| Nathan Blose, *et al.*, *On behalf of himself and those similarly situated*, | Case No. 1:18-cv-02184-RM-SKC |
| Plaintiffs, | Judge Raymond Moore |
| v. | Magistrate Judge S. Kato Crews |
| JARINC, Ltd., *et al.* | |
| Defendants. | |

Plaintiffs' Unopposed Motion for Final Settlement Approval

Plaintiffs ask that the Court grant final approval of the parties' Settlement Agreement, Doc. 142-1, and dismiss the case with prejudice. The Settlement Agreement resolves the collective and class-wide claims raised in this lawsuit. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only.

Respectfully submitted,

*/s/ Nathan Spencer*
Andrew R. Biller (0081452)
Andrew P. Kimble (0093172)
Nathan B. Spencer (92262)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 452-3887
Facsimile: (614) 340-4620

1

*abiller@billerkimble.com*
*akimble@billerkimble.com*
*nspencer@billerkimble.com*

David Lichtenstein
Matt Molinaro
Kristina Rosett
LAW OFFICE OF DAVID LICHTENSTEIN, LLC
1556 Williams St., Suite 100
Denver, CO 80218
dave@lichtensteinlaw.com
matt@lichtensteinlaw.com
kristina@lichtensteinlaw.com

*Counsel for Plaintiffs*

## Memorandum in Support of Plaintiffs' Unopposed Motion for Final Settlement Approval

On February 18, 2021, the Court granted preliminary approval of the parties' Rule 23 class/FLSA collective action settlement, and ordered the Parties to distribute Notice of the Settlement to the class. *See* Order, Doc.143.

The Notice process is now complete. Of the 3,272 pizza delivery drivers who make up the settlement class, 1 Class Member opted out of the Rule 23 class settlement, making the total settlement class 3,271. The Parties now seek an order (1) granting final approval of the Settlement Agreement previously filed as Doc. 142-1 as fair, reasonable and adequate; (2) certifying this case as an FLSA collective action and Rule 23 class action for settlement purposes; (3) approving the requested award of attorneys' fees and costs; (4) approving the service awards; (5) dismissing the action with prejudice; and (6) ordering the parties to carry out the remaining terms of the Settlement Agreement. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only.

1. **Background of the Lawsuit, Claims, and Settlement.**

In Plaintiffs' Motion for Preliminary Settlement Approval (Doc. 142), Plaintiffs detailed the claims asserted in this lawsuit, the course of the litigation, the settlement negotiations and considerations, the scope of the release of claims, and the terms of the settlement. Plaintiffs incorporate that Motion herein in its entirety.

Because Plaintiffs incorporate the Motion for Preliminary Approval, they will not recount the details of their claims and the settlement in the present Motion. In summary, Plaintiffs allege

3

that Defendants, operators of a Domino's franchisee, underpay their pizza delivery drivers because they do not adequately reimburse for automobile-related expenses incurred for Defendants' benefit. Plaintiffs allege that this practice violates the Fair Labor Standards Act and Colorado law. Defendants claim that they have properly reimbursed the delivery drivers and paid all wages due.

The parties' settlement resolves the claims asserted in the lawsuit on behalf of a Settlement Class of "traditional" and "on-demand" pizza delivery drivers employed by Defendants between August 24, 2015 and December 31, 2020. Pursuant to the Settlement Agreement, all Class Members who did not object or opt out will receive a *pro rata* share of the Settlement Fund of $1,800,000.00 (less the administrator's costs and fees, service awards to Plaintiffs, and class counsel's fees and costs). *See* Doc. 142-1, Settlement Agreement, Section 4(A). The Settlement Fund is prorated among Class Members based on (1) how many miles each Class Member drove (2) each Class Member's classification as a "traditional" or "on demand" delivery driver and (3) whether the Class Member filed an opt-in form in this case and, thus, preserved more of their FLSA claims. *Id.*

On February 18, 2020, the Court granted preliminary approval of the parties' Settlement Agreement. Doc. 142. The parties have completed the Notice process, and now seek final approval of the settlement.

## 2. The Notice Process and Settlement Award Calculations

Pursuant to the Settlement Agreement, the parties retained a Settlement Administrator, CPT Group (the "Administrator"), to complete the Notice process. The Administrator sent the Notice by first class mail to 3,272 Class Members, as well as CAFA notices to the appropriate government officials. 1 Class Member opted out of the settlement and none objected to the

settlement. 272 notices were returned as undeliverable, and were not able to be forwarded or re-sent, despite the Administrator's efforts to locate updated addresses for them. Exhibit 1, Declaration of Nathan Spencer ("Spencer Decl."), at ¶¶ 13-14.

After deducting fees, expenses, and for Plaintiffs' incentive awards, the Class Members will each receive a *pro rata* share of the Settlement Fund based on (1) the number of miles they drove during the settlement period and (2) whether they filed an opt-in form in this lawsuit. Two adjustments will be made to the prorated distribution. First, traditional delivery drivers who opted in will be credited with their actual number of miles driven while the on-demand drivers who opted in will be credited with one half of their actual miles driven for settlement calculation purposes. This is to account for the higher hourly wage paid to the on-demand drivers. Second, drivers who joined the case prior to settlement will receive an additional amount for miles driven more than three years prior to the settlement being reached. This is to account for those drivers potentially preserving additional claims compared to drivers who did not join the case.

3. **Class Action Settlement Procedure**

The Rule 23 class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected Class Members; and

3. A final settlement approval hearing at which Class Members may be heard regarding the settlement, and at which arguments concerning fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("Newberg") §§ 11.22, *et seq.* (4th ed. 2002). This process safeguards Class Members' procedural

due process rights and enables the Court to fulfill its role as a guardian of the class's interest. With this Motion, Plaintiffs request that the Court take the final step—approval of the Settlement Agreement.

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

- Within thirty (30) days of the Effective Date (as defined in the Agreement), Defendants shall wire to the qualified settlement fund established by the Administrator the maximum settlement amount of one million eight hundred thousand dollars ($1,800,000.00). Doc. 142-1 at Section 7(G).

- Within ten (10) days of receipt of the settlement funds, the Administrator shall issue checks to Class Members, Class Counsel, and Class Representatives. *Id.* at Section 7(H).

**4. The Settlement is fair, reasonable, and adequate, and should be approved by the Court.**

Courts considering collective settlements under the FLSA turn to the factors for evaluating the fairness of a class action settlement under Fed. R. Civ. P. Rule 23(e). *See Gambrell v. Weber Carpet, Inc.*, No. 10-131-KHV, 2012 WL 5306273, at *3 (D. Kan. Oct. 29, 2012). To determine whether a proposed settlement under Fed. R. Civ. P. 23(e), is fair and equitable to all parties, courts apply the following fairness factors: (1) whether the proposed settlement was fairly and honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation and (4) the judgment of the parties that the settlement is fair and reasonable.

In their Motion for Preliminary Settlement Approval, Plaintiffs explained why the parties' settlement is a fair, reasonable, and adequate resolution of the claims asserted in this lawsuit under the four factors listed above. Doc. 142, pp. 10-11. The Court, in its Order granting preliminary

approval, held that the proposed settlement fell within the "range of reasonableness." Doc. 143, ¶ 8.

Only one of the 3,272 Class Members has opted out of the Settlement Agreement. No Class Members have objected to the Settlement Agreement. As a result, like the other four factors, these factors support granting approval of the settlement. Spencer Decl., at ¶¶ 13-14.

Because these factors favor approval, the Court should grant final approval.

5. **The payment of attorneys' fees and costs is reasonable.**

In its Order granting preliminary approval, the Court provisionally approved Plaintiffs' Counsel's request for attorneys' fees and costs. Doc. 143, ¶ 10. The Court then explained that "the requested costs are also provisionally approved. The fees and costs will be approved after the final hearing occurs, taking into account any objections." *Id*. The Notice period is complete and no Class Members have objected to Plaintiffs' Counsel's requested attorneys' fees and costs.

It is common in the Tenth Circuit to examine the reasonableness of a fee request through a percentage of recovery analysis. Plaintiffs' Counsel applies for one-third of the settlement fund, or $600,000.00. This fee award is in line with awards in the Tenth Circuit in similar cases. *See, e.g.*, *Whittington v. Taco Bell of Am., Inc.*, Civil Action No. 10-cv-01884-KMT-MEH, 2013 U.S. Dist. LEXIS 161665, at *19 (D. Colo. Nov. 13, 2013) ("In common fund cases, utilizing the percentage method to calculate attorney fees awards is the standard."); *Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.,* Civil Action No. 09-cv-01543-REB-KMT, 2010 WL 5387559, at *5-*6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation*, Nos. CIV 89-822-T, CIV 89-1186-T, 1993

7

WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit").

To date, Plaintiffs' Counsel's current lodestar is $189,584.00, which is based on 437.2 hours worked at an average hourly rate of $433.63 per hour. This hourly rate is reasonable. Spencer Decl., at ¶¶ 18-23. As such, to the extent the Court considers a "lodestar cross-check," the attorneys' fees contemplated by the Settlement Agreement are reasonable.

Plaintiffs' Counsel's litigation costs are $17,299.86. These costs primarily went toward background investigations, travel costs, and mediation. *Id.* at ¶ 23.

Plaintiffs' Counsel's requested attorneys' fees in the amount of $600,000.00 and costs of $17,299.86 are reasonable and should be approved.

Finally, the Claims Administrator's fees are expected to be $20,000. The Claims Administration costs are reasonable and should be approved.

**6. The service awards to Plaintiffs should be approved.**

To date, no Class Member has objected to the $10,000 service awards to both Plaintiffs Nathan Blose and Stephanie Rosvall, or the $2,000 service award to Plaintiff Kellie Huckstep. As noted previously, these awards are in line with similar cases. Doc. 142, Plaintiffs' Preliminary Approval Motion, Page 13, citing cases. None of the Class Members would have recovered anything without Plaintiffs' efforts. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1006 (7th Cir. 1998). This is especially true in employment litigation. *See Velez v. Majik Cleaning Servs., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783,

*7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."). Plaintiffs ask that the Court approve the service awards to Plaintiffs.

## 7. Conclusion

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Settlement Approval and for an Award of Attorneys' Fees and Expenses and enter the Proposed Order.

Respectfully submitted,

*/s/ Nathan Spencer*
Andrew R. Biller (0081452)
Andrew P. Kimble (0093172)
Nathan B. Spencer (92262)
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 452-3887
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*nspencer@billerkimble.com*

David Lichtenstein
Matt Molinaro
Kristina Rosett
LAW OFFICE OF DAVID LICHTENSTEIN, LLC
1556 Williams St., Suite 100
Denver, CO 80218
dave@lichtensteinlaw.com
matt@lichtensteinlaw.com
kristina@lichtensteinlaw.com

*Counsel for Plaintiffs*

9

## Certificate of Service

Plaintiffs certify that a copy of the foregoing will be automatically served on all parties via the Court's ECF system.

/s/Nathan Spencer
Nathan Spencer