IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 18-cv-02184-RM-SKC

NATHAN BLOSE, and
STEPHANIE ROSVALL, on behalf of themselves and those similarly situated,

    Plaintiffs,

v.

JARINC, LTD d/b/a Domino's Pizza,
JOSEPH ROMANO,
PATRICK ROMANO,
JOHN DOE CORPS. 1-10, and
JOHN DOES 1-10,

    Defendants.

---

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION
FOR FINAL SETTLEMENT APPROVAL**

---

Before the Court is Plaintiffs' Unopposed Motion for Final Settlement Approval. (ECF No. 145.) Having reviewed the Motion and considered the arguments made during the Final Approval Hearing held on August 17, 2021, the Court grants the Motion for the reasons below.

**I.    BACKGROUND**

This is a wage and hour lawsuit brought on behalf of a class of pizza delivery drivers who worked at the Domino's Pizza stores allegedly owned and operated by Defendants JARINC, Ltd., Joseph Romano, and Patrick Romano. (*See* ECF No. 104.) Plaintiff filed his Complaint on August 24, 2018. (*See* ECF No. 1.) On December 5, 2018, the parties filed a Joint Motion to Approve Stipulated Form of Notice of Collective Action and to Stay Pending Mediation. (*See* ECF No. 19.) On December 19, 2018, the Court granted in part and denied in part the

parties' Joint Motion. (*See* ECF No. 23.) The Court granted the parties' proposed notice and mediation protocol but denied the request for a stay. (*Id.*) The Court later stayed proceedings while the parties sought to resolve the case at mediation. (*See* ECF Nos. 32, 80.)

The parties attended a mediation on August 27, 2019 but were unable to reach an agreement. On September 14, 2020, the Court granted Defendants' Motion for Summary Judgment and denied Plaintiffs' Motion for Summary Judgment. *Blose v. Jarinc, Ltd.*, No. 18-cv-02184-RM-SKC (D. Colo. Sept. 14, 2020). The parties then attended a second mediation on December 2, 2020 that resulted in the Settlement Agreement now before this Court. Plaintiff's primary claim in this lawsuit is that Defendants paid delivery drivers at or close to minimum wage and, at the same time, required delivery drivers to pay for their own delivery expenses like vehicle maintenance, insurance, vehicle wear and tear, etc., but failed to sufficiently reimburse the drivers for these costs. Plaintiff maintains that employers must reimburse their employees for these costs. *See, e.g.*, 29 C.F.R. 531.35; *Yu G. Ke v. Saigon Grill, Inc.,* 595 F.Supp.2d 240, 258 (S.D.N.Y. Oct. 21, 2008) ("Indeed, there is substantial legal authority for the proposition that mechanisms for transportation-typically motor vehicles-can be tools of the trade." (citing cases)). Plaintiffs claim that Defendants failed to reasonably approximate the expenses associated with employees' business use of their personal vehicles and have not adequately reimbursed the delivery drivers for all their expenses. Plaintiffs claim that Defendants' reimbursement practices violate the Fair Labor Standards Act and the North Carolina Wage and Hour Act.

Defendants deny all allegations of unlawful conduct and expressly deny that they under-reimbursed their delivery drivers. Defendants allege that the reimbursements paid more than cover driving expenses for Plaintiffs and putative class members. Moreover, Defendants assert

2

that Plaintiffs have not provided sufficient evidence of their actual expenses to support their claim that Defendants' reimbursement was inadequate. Defendants also maintain they are not required to reimburse at the IRS rate or reimburse actual expenses but instead may reasonably approximate the expenses associated with employees' business use of their personal vehicles. *See Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1287 (D. Kan. 2010); Department of Labor Opinion Letter FLSA-2020-12; *Blose v. Jarinc, Ltd. et al*., No. 18-cv-2184-RM-SKC (D. Colo. Sept. 14, 2020); *Kennedy v. Mountainside Pizza, Inc*., No. 19-cv-1199-CMA-STV (D. Colo. Aug. 26, 2020). Finally, it is Defendants' position that if the matter were to proceed, Plaintiffs would be unable to satisfy the criteria for certifying this matter as a class or collective action.

## II.     SETTLEMENT AGREEMENT

The parties' Settlement Agreement creates a Settlement Fund of $1,800,000.00. The distributions are as follows:

    i.    Opt-In Subclass

        a)    The Opt-In Subclass consists of approximately 214 Class Members who returned a consent to join form to Plaintiffs' Counsel on or before December 2, 2020.

        b)    The Opt-In Subclass Class Members who opted in prior to December 2, 2020 have provided their consent to join this lawsuit and be bound by the results of this lawsuit, stating in relevant part: "I hereby consent to join this FLSA collective action against Defendants to recover unpaid wages under federal law. I designate the Named Plaintiff to make all decisions on my behalf concerning the method and manner of conducting the case including settlement, the entering of an agreement with Plaintiff's counsel regarding payment of attorneys' fees and costs, and all other matters pertaining to this lawsuit. For purposes of this lawsuit, I choose to be represented by Biller & Kimble, LLC, Law Office of David Lichtenstein, LLC, and other attorneys with whom it may associate."

ii. Distribution

    a) The amount of the Settlement Amount remaining after the payment of court-approved attorneys' fees, costs, expenses, service awards, and claims administration costs (referred to as the "Class Fund"), will be distributed to the Class Members (including the Opt-in Subclass) as follows:

1. Each Class Member's check will be equal to the Class Member's prorated share of the Class Fund based on the miles driven by each Class Member during the Class Period, divided by the total miles driven by all Class Members during the Settlement Period. The Class Fund shall be allocated based on 1x for Traditional Delivery Drivers and .5x for On Demand Delivery Drivers.

2. The exception is that each mile driven by the Opt-in Subclass members in the Class Period will count as 1.5x for Traditional Drivers for miles driven prior to 2017.

3. The intent of this distribution method is to recognize that the Opt-in Subclass members potentially preserved more of their claims arising prior to January 1, 2017.

4. Within 40 days of the Court granting final approval of this Settlement Agreement, the Administrator will issue checks to each Class Member according to the above formula.

    b) Checks may be cashed or negotiated within 180 days of being issued. After 180 days, the check will be void. The face of each check will contain the following language: "Void after 180 days." The proceeds of any voided checks will be distributed to the Contingency Fund.

iii. Contingency Fund

    a) The amount of any uncashed checks from the Class Fund will be retained in QSF and referred to as the "Contingency Fund."

    b) Class Members may request that the Administrator reissue stale checks (i.e., checks that were not cashed within 180 days) and the Administrator shall reissue said checks upon approval of Class and Defendants' Counsel.

    c) Class Members can make a claim against the Contingency Fund via email, U.S. mail, or through Class Counsel by providing name and social security number (or if social security number is not available, such other form of identification as reasonably requested by the claims

4

        administrator to confirm the identity of the Class Member). The Administrator may request any additional identifying information or documents (if any) that the Administrator reasonably believes necessary to confirm the identity of the Class Member.

        d)       Distributions from the Contingency Fund shall be in the amount to replace checks previously distributed (less administrative costs incurred for such replacements to the extent such incurred by Claims Administrator) and will be distributed within thirty (30 days) of request for replacement and proof of identity. To the extent that there is a dispute regarding this process, the Parties and their Counsel will attempt to informally resolve the dispute. If informal resolution is unsuccessful, the Parties will submit the dispute to mediation and if mediation fails to the Court for adjudication.

        e)       Checks may be cashed or negotiated within 180 days of being issued. After 180 days, the check will be void. The face of each check will contain the following language: "Void after 180 days." The proceeds of any voided checks after the final December 15, 2023 distributions described above will be distributed *cy pres* to the Domino's Partners Foundation, a 503(c)(3) non-profit organization organized to help Domino's Team members in times of hardship and adversity. Said distributions shall be made 200 days after the final distributions are made.

    iv.    Each check will be treated as expense reimbursement up to the IRS rate, which shall be a blended IRS rate of $.55 for purposes of this settlement the parties have agreed to. Any amounts paid above that will represent liquidated damages and will not be considered wages or subject to withholding. A Form 1099 will issue to Class Members for monies paid as liquidated damages.

Each Class Member who does not opt-out of the Settlement releases all wage and hour claims accrued from August 24, 2015 until December 31, 2020 arising out of the facts asserted in the Lawsuit that were made against Defendants or the Released Parties, including claims relating to failure to pay wages, the under-reimbursement of expenses, unlawful deductions, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, and any related common law and equitable (e.g., breach of contract, unjust enrichment, etc.) claims, including any related claims for liquidated damages, penalties, attorney fees and costs (including claims administration fees), and interest, that could

be pursued under Colorado Minimum Wage Act, the Colorado Wage Claim Act, and any applicable state, local, or municipal law or regulation, whether known or unknown; and any and all derivative claims relating to unpaid wages, minimum wage, or overtime compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit, including the right to arbitrate said claims.

The Settlement Agreement also allows any class member who does not timely cash their check to request the Claims Administrator reissue their check at any time until December 1, 2023. (*See* ECF No. 142-1, Settlement Agreement, at ¶ 4(C).) The Court retains continuing jurisdiction over the Lawsuit to enforce, interpret, and otherwise implement the Settlement.

The parties hired a Claims Administrator to distribute the Notice of Settlement. Notice was sent to 3,272 class members. (*See* ECF No. 145 at 4.) Defendants also complied with the Class Action Fairness Act ("CAFA") by sending notices to the appropriate government officials. (*See id.* at 4-5.)

The Settlement Agreement provides for payment of attorney fees in the amount of 1/3 of the Settlement Fund, reimbursement of litigation expenses, administrative costs, and service awards to Plaintiff Nathan Blose for $10,000, Plaintiff Stephanie Rosvall for $10,000, and Kellie Huckstep for $2,000.

### III. DISCUSSION

The Court acknowledges that Defendants have (a) asserted a number of separate and affirmative defenses to this action; (b) agreed to the settlement without admission of liability or wrongdoing; and (c) consented to class certification pursuant to Fed R. Civ. P. 23 and collective action certification pursuant to Section 216(b) for settlement purposes only.

6

A.   **Class Certification Is Appropriate for Settlement Purposes**

The Court hereby certifies the following Rule 23 settlement class:

All current and former "traditional" delivery drivers employed from August 24, 2015 to December 31, 2020 at Defendants' Domino's stores owned, operated, and/or controlled by Defendants.

And:

All current and former "on-demand" delivery drivers employed from August 24, 2015 to December 31, 2020 at Defendants' Domino's stores owned, operated, and/or controlled by Defendants.

The Settlement Class meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3) for purposes of settlement.[1]  *See, e.g.*, *Young v. Rolling in the Dough, Inc.,* No. 1:17-cv-07825, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020) (approving a Rule 23 settlement class of Domino's drivers asserting similar claims).

Federal Rule of Civil Procedure 23(a)(1) is satisfied because there are 3,271 class members, and thus, joinder is impracticable.  (ECF No. 142 at 13.)

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(2) because Plaintiffs and the class members share common issues of fact and law.  "A finding of commonality requires only a single question of law or fact common to the entire class."  *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010).  Plaintiffs allege that Defendants' reimbursement policy harmed all the class members in the same way.  Defendants do not contest that commonality is satisfied for settlement purposes.

For the same reason, Plaintiffs satisfy the typicality requirement in Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs' claims arise from the same factual and legal circumstances

---

[1] The Court acknowledges that Defendants agreed to class certification pursuant to Rule 23 and collective action certification pursuant to Section 216(b) for settlement purposes only.

that form the basis of the class members claims. (ECF No. 142 at 14.) Defendants do not contest that typicality is satisfied for settlement purposes.

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that they have interests antagonistic to or at odds with those of class members. *Schwartz v. Celestial Seasonings*, 178 F.R.D. 545, 552 (D. Colo. 1998) ("Absent evidence to the contrary, a presumption of adequate representation is invoked. Any doubt regarding adequacy of representation should be resolved in favor of upholding the class").

Plaintiffs also satisfy Federal Rule of Civil Procedure 23(b)(3). Class members' common factual allegations and legal theory—that Defendants under-reimbursed the delivery drivers, paid them at the wrong rate for some hours, and took improper deductions from wages—predominate over any factual or legal variations among class members. Defendants do not contest predominance is satisfied for settlement purposes.

The Court appoints Biller & Kimble, LLC, and The Law Office of David Lichtenstein, LLC as class counsel because they meet all of the requirements of Rule 23(g).

Finally, the Court finds that the Class Notice process undertaken by the Claims Administrator met the requirements of Rule 23(e)(1), and the government notices provided met the requirements of CAFA. (ECF No. 145 at 4-5.)

The Court also finds that all FLSA opt-in Plaintiffs are properly joined to the case, and that the case is properly certified as a collective action pursuant to Section 216(b) of the FLSA.

The Court GRANTS certification of a Rule 23 and FLSA Section 216(b) settlement class of Defendants' delivery drivers allegedly employed by Defendants JARINC, Ltd, Joseph Romano, and Patrick Romano from August 24, 2015 through December 31, 2020.

      **B.**      **The Parties' Settlement Is Fair, Reasonable, and Adequate**

Rule 23(e) requires court approval for a class action settlement so that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Blanco v. Xtreme Drilling & Coil Servs.*, No. 16-cv-00249, 2020 U.S. Dist. LEXIS 126155, at *6 (D. Colo. July 17, 2020); *Pliego v. Los Arcos Mexican Rests., Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016).

To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Blanco*, 2020 U.S. Dist. LEXIS 126155, at *6-7.

As to the first factor, this case has been pending for over three years, during which the parties have briefed several motions and engaged in formal discovery. Counsel for both parties are well-versed in pizza delivery driver litigation, having litigated a number of cases across the country, and were therefore able to evaluate the strengths and weaknesses of the case based on the discovery exchanged. The parties proceeded to mediation twice, and there is no evidence of collusion. Based on the information provided, the Court finds that the settlement is the product of fair and honest negotiations.

The Court also finds that there are serious questions of law and fact in this case that likely would have affected the class members' chances at recovery. Defendants argue they properly compensated all their delivery driver employees. In addition, the parties dispute several issues, including class certification, which statute of limitations applies, and to what extent state law

penalties and/or liquidated damages would be available. As a result, the outcome of the litigation for either party is far from settled. Given the inherent uncertainty in continuing litigation of these issues, the Court finds that this factor weighs in favor of approving the parties' Settlement Agreement.

The Court next considers whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. Continued litigation would likely lead to additional motion practice, trial, and an appeal. Under the parties' Settlement Agreement, class members will receive a pro rata share of $1,800,000, less attorney fees and other adjustments. (*See* ECF No. 142-1 at 4-8, ¶ 4.) Given the risks and costs of protracted litigation and uncertainty surrounding class members' ability to recover, the Court finds that the immediate recovery provided for in the parties' Settlement Agreement outweighs the possibility of greater future relief.

The fourth factor also weighs in favor of final approval of the parties' settlement. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Blanco*, 2020 U.S. Dist. LEXIS 126155, at *9 (quoting *Hapka v. CareCentrix, Inc.*, 2018 U.S. Dist. LEXIS 68185, 2018 WL 1871449, at *5 (D. Kan. Feb. 15, 2018)). Here, class counsel has extensive experience representing plaintiffs in wage and hour law cases and in class actions. (*See* ECF No. 142 at 7-8.) In Plaintiff's Unopposed Motion, counsel states that "given the strengths and weaknesses of the claims and collectability, this settlement is fair, adequate, and reasonable. (*See id.* at 8.)

Finally, no class members objected to the settlement, and just one out of 3,272 class members requested exclusion from the settlement. (*See* ECF No. 145 at 7.) Class members' apparently positive response to the Settlement is further evidence that it is fair, adequate, and

reasonable. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) (noting that the fact that "only a small number of objections are received . . . can be viewed as indicative of the adequacy of the settlement" (internal quotation marks omitted)). The Court therefore APPROVES the parties' Settlement Agreement as fair, adequate, and reasonable.

        C.        **Fees and Expenses**

Plaintiff's Counsel asks the Court to approve an attorney fees award of one-third of the Settlement Fund, *i.e.*, $600,000. Defendants do not object to the requested fee award. In granting preliminary approval, the Court provisionally approved Plaintiff's Counsel's request for fees and costs and explained that the fees and costs would be finally approved after taking into account any objections. The notice period is closed, and no class members objected to the settlement or the requested fees and costs.

It is common in the Tenth Circuit to examine the reasonableness of a fee request through a percentage of recovery analysis. *See, e.g.*, *Blanco*, 2020 U.S. Dist. LEXIS 126155, at * 10-12 (approving a fee award equal to 38% of the settlement amount); *Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884, 2013 U.S. Dist. LEXIS 161665, at *19 (D. Colo. Nov. 13, 2013) ("In common fund cases, utilizing the percentage method to calculate attorney fees awards is the standard."); *Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.,* No. 09-cv-01543, 2010 WL 5387559, at *5-6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class."); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation*, Nos. CIV 89-822-T, CIV 89-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting that "attorneys' fees of 33 1/3% of the common fund created by the efforts of

counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit").

The Court finds this request for attorney fees to be fair, adequate, and reasonable, and therefore GRANTS Plaintiff's Counsel's request for attorneys' fees in the amount of $600,000. The Court also GRANTS Plaintiff's Counsel's request for reimbursement of litigation costs in the amount of $17,299.86 and APPROVES the claims administration costs of $20,000 as fair, adequate, and reasonable.

### D.   Service Awards

The Court also approves the request for service awards in the amount of $10,000 to Nathan Blose, $10,000 to Stephanie Rosvall, and $2,000 to Kellie Huckstep. These Plaintiffs provided valuable insight to Class Counsel throughout the case, and their efforts resulted in substantial payments to a class of over 3,000 minimum wage pizza delivery drivers. The requested service award is reasonable. *See Dorn v. Eddington Sec., Inc.,* No. 08 Civ. 10271(LTS), 2011 WL 9380874, at *7 (S.D.N.Y. Sept. 21, 2011) (finding service award of $10,000 to the plaintiff in a FLSA and state law wage class action was reasonable, stating "such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs."); *Shaw v. Interthinx,* No. 13-cv-01229, 2015 WL 1867861, at *9 (D. Colo. Aug. 22, 2015) (approving $10,000 incentive awards to each of the five named plaintiffs). Accordingly, the Court GRANTS Plaintiffs' request for service awards.

IV.     **CONCLUSION**

Having reviewed Plaintiffs' Unopposed Motion for Final Settlement Approval, the Court GRANTS the motion. Settlement class members are permanently enjoined from prosecuting against the Released Parties (as defined in the Agreement) any and all of the Released Claims (as defined in the Agreement).

This action is hereby DISMISSED WITH PREJUDICE, with the Court to retain jurisdiction to enforce the Agreement. The Parties are ordered to carry out the settlement according to its terms.

DATED this 17th day of August, 2021.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

13